IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States District Court
Southern District of Texas
**ENTERED**
September 30, 2016
David J. Bradley, Clerk

| | |
|---|---|
| DIANE MARKS,                        § | |
|                                     § | |
|                 Plaintiff,          § | |
|                                     § | |
| v.                                  § | CIVIL ACTION NO. H-15-1224 |
|                                     § | |
| CITY OF HOUSTON,                    § | |
|                                     § | |
|                 Defendant.          § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Diane Marks ("Marks"), brings this action against defendant, City of Houston ("COH"), for wrongful discharge in violation of the Texas Whistleblower Act, Texas Government Code Chapter 554, and for employment discrimination based on race and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2, <u>et seq.</u>, and age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1).[1] Pending before the court is the City of Houston's Motion for Summary Judgment (Docket Entry No. 19), and the COH's objections to ¶¶ 3-4 and 8 of Marks' declaration attached to Marks' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Docket Entry No. 31).[2] For the reasons explained below, the COH's objections to Marks' declaration will be sustained in part, overruled in part, and declared moot in part, defendant's motion for summary judgment will be granted, and this action will be dismissed.

---

[1]Plaintiff's Original Petition and Jury Demand attached to Notice of Removal ("Plaintiffs' Petition"), Docket Entry No. 1-4.

[2]City of Houston's Reply to Plaintiff's Response to Motion for Summary Judgment ("COH's Reply"), Docket Entry No. 31, pp. 1-2.

## I.  Undisputed Facts

Marks began working for the COH in January of 1992 as an office supervisor in the Finance Department.[3]  Marks soon transferred to the 9-1-1 Emergency Center where she served as an administrative assistant until 1996 when she was promoted to the position of administration manager.[4]  When the Houston Emergency Center ("HEC") was formed in 2003 or 2005, Marks' job title changed to division manager, a position in which she was primarily responsible for performing human resources tasks, and she reported to Barbara Evans.[5]  Prior to Evans' departure, Evans recommended Marks for promotion to Assistant Director.[6]  In October of 2012,

---

[3]City of Houston's Motion for Summary Judgment ("COH's MSJ"), Docket Entry No. 19, p. 4 (citing Exhibit 1, Oral Deposition of Diane Buggs Marks ("Marks' Deposition"), pp. 15:13-16:3, Docket Entry No. 19-1, p. 4); Plaintiff Diane Marks Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum"), Docket Entry No. 27, pp. 2-3 (citing Exhibit A, Declaration of Diane Marks ("Marks' Declaration"), p. 1 ¶ 1, Docket Entry No. 27-1, p. 2).

[4]COH's MSJ, Docket Entry No. 19, p. 4 (citing Exhibit 1, Marks' Deposition, pp. 18:2-19:21, 22:19-22 Docket Entry No. 19-1, pp. 5-6).  See also Plaintiff's Memorandum, Docket Entry No. 27, p. 3 (citing Exhibit A, Marks' Declaration, p. 1 ¶ 1, Docket Entry No. 27-1, p. 2).

[5]COH's MSJ, Docket Entry No. 19, p. 4 (citing Exhibit 1, Marks' Deposition, pp. 23:25-24:18, 25:24-26:21, Docket Entry No. 19-1, pp. 6-7).  See also Plaintiff's Memorandum, Docket Entry No. 27, p. 3 (citing Exhibit A, Marks' Declaration, pp. 1-2 ¶¶ 2-3, Docket Entry No. 27-1, pp. 2-3).

[6]Plaintiff's Memorandum, Docket Entry No. 27, p. 3 (citing Exhibit A, Marks' Declaration, p. 2 ¶ 3, Docket Entry No. 27-1, p. 3).

David Cutler, HEC Director, appointed Marks to the position of Deputy Assistant Director, a position that made her not only responsible for Human Resources at HEC but also second-in-command to Cutler to whom she reported and from whom she consistently received good performance reviews.[7]   Marks served as Deputy Assistant Director until July of 2014 when Cutler discharged her.[8]

In 2014 four HEC employees filed formal complaints with the City of Houston Office of Inspector General ("OIG") involving HEC including, <u>inter alia</u> allegations that Marks had used City resources for personal projects, and had attempted to have two of her friends promoted twice in the same month.[9] During the course of the ensuing investigation, the OIG investigator, Clarence

---

[7]COH's MSJ, Docket Entry No. 19, p. 5 (citing Exhibit 1, Marks' Deposition, pp. 36:13-21, 130:12-23, Docket Entry No. 19-1, pp. 9, 33, and Exhibit 2, Oral Deposition of David Francis Cutler ("Cutler's Deposition"), pp. 116:11-117:12, Docket Entry No. 19-2, p. 30). <u>See also</u> Plaintiff's Memorandum, Docket Entry No. 27, p. 3 (citing Exhibit A, Marks' Declaration, Docket Entry No. 27-1, p. 2 ¶ 3 ("Throughout my tenure at HEC and the City, I consistently received excellent or above average performance appraisals.  In fact, I have never received a negative performance appraisal or a disciplinary reprimand until my termination in July 2014.")).

[8]COH's MSJ, Docket Entry No. 19, pp. 4, 8 (citing Exhibit 1, Marks' Deposition, p. 41:5-7, Docket Entry No. 19-1, p. 5).  <u>See also</u> Plaintiff's Memorandum, Docket Entry No. 27, p. 3 (acknowledging that Marks was discharged but not stating the date).

[9]COH's MSJ, Docket Entry No. 19, pp. 5-6 (citing Exhibit 4, OIG Report Dated July 8, 2014, pp. 1-2).  <u>See also</u> Plaintiff's Memorandum, Docket Entry No. 27, p. 4 (citing Exhibit A, Marks' Declaration, Docket Entry No. 27-1, p. 3 ¶¶ 5-6 (acknowledging that she was interviewed by an OIG investigator, she was aware that allegations had been lodged against her, and she denied those allegations)).

"Sonny" Kirchner, interviewed numerous HEC employees, including Marks and Cutler.[10] At the conclusion of the OIG investigation, the OIG sustained allegations that Marks used City personnel, City time, and City supplies (specialty cardstock, announcement paper, specialty cutters, etc.) to create on City time: (1) glossy tri-fold specialty programs; (2) family reunion announcements; (3) graduation announcements; (4) wedding/funeral announcements and programs, etc.; and (6) weekly church bulletins. Accordingly, OIG also sustained the allegation that

> Marks violated City Code, Section 18-3(4),(5):
>
> (1) Use the official's position or the city's facilities, equipment or supplies for the private gain or advantage of the official or others, or use or attempt to use the official's position to secure special advantage for the position or others;
>
> (2) Use or attempt to use any city employee(s) to perform acts or services for the private gain or advantage of the official or others, unless the city employee(s) is acting during off-duty hours or is on a duly approved leave of absence.[11]

The OIG also sustained allegations that Marks had inappropriately attempted to obtain two promotions for two of her friends, and that Marks was untruthful when asked about those attempts:

---

[10]COH's MSJ, Docket Entry No. 19, pp. 5-6 (citing Exhibit 4, OIG Report Dated July 8, 2014, and Exhibit 5, OIG Investigator's Report Dated June 6, 2014). See also Plaintiff's Memorandum, Docket Entry No. 27, p. 4 (citing Exhibit A, Marks' Declaration, Docket Entry No. 27-1, p. 3 ¶¶ 5-6).

[11]OIG Report Dated July 8, 2014, p. 18, Docket Entry No. 19-4, p. 19.

When caught, Marks told Cutler that her attempt to promote both women a second time within 60 days of the first time was a joke, but Marks admitted to OIG she tried to have both [Sara] Jermany and [Helen] Woods (HR administrators) promoted twice in the same 60-day period in a competitive move to keep their pay the same as Michelle Taylor (Finance Systems Analyst II) who is a direct report to Jane Nyambura.  Several witnesses expressed that Marks feels very insecure about not having a college degree and hires direct reports without degrees to work for her to avoid being outshined.  They allege Marks tries to maintain that her direct reports should make the same money as the reports of the Finance or other specialized skills groups.

Whatever her motivation, OIG sustains that Marks' actions were inappropriate and her statement to Cutler that the whole attempt was a joke was untruthful.[12]

The OIG Report concluded with a recommendation that Marks be discharged or allowed to retire:

In view of Marks' violation of City Code Section 14-185 and her poor judgment in attempting to promote two employees twice within 60 days to be competitive with Nyambura's employee, OIG recommends Marks' at-will employment be terminated (or that she be allowed to retire) and her HR function be absorbed into central HR, with HEC's non-standard HR process replaced with City-standard processes. . .[13]

Upon receiving the OIG Report, Cutler made the decision to terminate Marks' employment effective July 14, 2014.[14]

---

[12]Id. at 20-21, Docket Entry No. 19-4, pp. 21-22.

[13]Id. at 23, Docket Entry No. 19-4, p. 24.

[14]COH's MSJ, Docket Entry No. 19, p. 8 (citing Exhibit 1, Marks Deposition, p. 41:3-7, Docket Entry No. 19-1, p. 11; Exhibit 2, Cutler Deposition, pp. 128:22-138:13, Docket Entry No. 19-2, pp. 33-36); Plaintiff's Memorandum, Docket Entry No. 27, p. 5 (citing Exhibit A, Marks' Declaration, p. 4 ¶ 7, Docket Entry No. 27-1, p. 5).

Following Mark's discharge, the COH eliminated Marks' position of Deputy Assistant Director and divided Marks' duties between two new positions: Client Resource Manager ("CRM"), and Employee Resource Manger ("ERM") both of whom worked at HEC, but reported to the City's central Human Resources office.[15]

On August 19, 2014, approximately one month after her discharge, Marks filed a complaints with the City's OIG.[16] Before then Marks had not made any complaints to the OIG.[17]

## II.  **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a

---

[15]Oral Deposition of Cheryl Ann Breed ("Breed Deposition"), pp. 30:5-31:24, Docket Entry No. 31-2, p. 9.

[16]Marks' Deposition, pp.158:16-159:2, Docket Entry No. 19-1, p. 40.

[17]Id.  See also id. at 78:14-79:6, Docket Entry No. 19-1, p. 20.

-6-

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. <u>Id.</u> Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Id.</u>

### III.  **Analysis**

Marks asserts claims for employment discrimination based on age, race, and sex, in violation of the ADEA and Title VII, respectively, and for wrongful discharge in violation of the Texas Whistleblower Act.[18]  COH argues that Marks "cannot establish a claim under the Texas Whistleblower Act because she did not in good faith make a report of a violation of law to an appropriate law

---

[18]Plaintiff's Petition, pp. 6-11 ¶¶ 26-51, Docket Entry No. 1-4, pp. 7-12.

enforcement authority."[19]  COH argues that Marks's ADEA and Title VII claims fail because Marks cannot establish a prima facie case of age, race, or sex discrimination, and even if she could establish a prima facie case, the COH had legitimate, non-discriminatory businesses reasons for ending her employment.[20] Without disputing that summary judgment is warranted on the claims she has asserted under the Texas Whistleblower Act and Title VII, Marks argues that summary judgment is not warranted on her ADEA claim because she has established a prima facie case of age discrimination, and she has presented ample evidence of pretext.[21]

## A.   Marks Fails to Raise Fact Issue on Her ADEA Claim

### 1.   Applicable Law

The ADEA provides, in relevant part, that it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Claims of employment discrimination brought under the ADEA can be proven through direct or circumstantial evidence.  Russell v. McKinney Hospital Venture, 235 F.3d 219, 222 (5th Cir. 2000).  Direct evidence of

---

[19]COH's MSJ, Docket Entry No. 19, p. 2.

[20]Id. at 3-4.

[21]Plaintiff's Memorandum, Docket Entry No. 27, pp. 7-12.

discrimination "is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." <u>Rachid v. Jack In The Box</u>, 376 F.3d 305, 310 n. 6 (5th Cir. 2004) (quoting <u>Sandstad v. CB Richard Ellis, Inc.</u>, 309 F.3d 893, 897 (5th Cir. 2002), <u>cert. denied</u>, 123 S. Ct. 2572 (2003)).  Marks has not cited direct evidence of discrimination and does not argue that this is a direct evidence case.  Instead, Marks acknowledges that her ADEA claim is based on circumstantial evidence.[22]

Marks may establish a claim of discriminatory discharge under the ADEA based on circumstantial evidence by using the framework set forth in <u>McDonnell Douglas v. Green</u>, 93 S.Ct. 1817 (1973).  <u>See</u> <u>Russell</u>, 235 F.3d at 222 & n. 3.  The <u>McDonnell Douglas</u> framework is a burden-shifting exercise pursuant to which plaintiffs carry the initial burden of demonstrating a <u>prima facie</u> case of discrimination.  93 S. Ct. at 1824.  To establish a <u>prima facie</u> case of intentional discrimination based on age using the <u>McDonnell Douglas</u> framework Marks must show that (1) she belongs to a protected class, (2) she was qualified for her job, (3) she suffered an adverse employment decision, and (4) she was replaced by someone outside of her protected class or otherwise discharged because of her age.  <u>Russell</u>, 235 F.3d at 223-24 (quoting <u>Brown v.</u>

---

[22]<u>Id.</u> at 7 (Acknowledging that "most discrimination cases are proven by circumstantial evidence," and arguing that "Marks established a <i>prima facie</i> case of age discrimination under the ADEA").

CSC Logic, Inc., 82 F.3d 651, 654 (5th Cir. 1996)).  If Marks makes a prima facie showing of discrimination, the burden shifts to the COH to articulate a legitimate, non-discriminatory reason for her discharge.  If the COH articulates a legitimate, nondiscriminatory reason for Marks's discharge, the presumption of discrimination disappears.  Id. at 222.  Marks retains the ultimate burden of proving intentional discrimination.  Id. (citing St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2749 (1993)).  To raise a fact issue for trial on her ADEA claim, Marks must present evidence capable of proving that age was the "but for" cause of the adverse employment action.  Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343, 2351 (2009).[23]  See also Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010) ("To establish an ADEA claim, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision.'")(quoting Gross, 129 S. Ct. at 2351).

---

[23]In Gross, 129 S. Ct. at 2351, the Supreme Court held that the Title VII standard for so-called "mixed-motives" cases was not applicable to claims under the ADEA.  The Supreme Court, however, has declined to decide whether the general evidentiary framework of McDonnell Douglas used in Title VII cases is appropriate in the ADEA context.  Id. at 2349 n. 2.  The court therefore remains bound by the burden-shifting framework for ADEA cases that has been employed consistently by the Fifth Circuit.  See Sandstad, 309 F.3d at 896 n. 2 ("This circuit applies the McDonnell Douglas rubric to both Title VII and ADEA claims.") (citing Russell, 235 F.3d at 222 n. 3)).

2.   <u>Application of the Law to the Undisputed Facts</u>

    (a)   Marks Has Established a Prima Facie Case

There is no dispute that Marks has satisfied three of the four elements needed to establish a prima facie case, <u>i.e.</u>, Marks' age of 55 places her in a protected class, Marks was qualified for her position, and Marks' discharge was an adverse employment action.[24] Citing the deposition testimony of Cheryl Ann Breed, COH argues that Marks is unable to establish a prima facie case of age discrimination because

> Marks was not replaced by anyone, let alone a person younger than she, in her position.  Marks's position of Assistant Deputy Director was eliminated, and her duties were divided among a number of other employees.  Two of the individuals who assumed those duties do not even report to the Houston Emergency Center or its Director, David Cutler.  Although the employees are housed at HEC, they are HR personnel and report to managers at Central Human Resources for the city of Houston, located at 611 Walker Street.[25]

COH's argument that Marks is unable to establish the fourth element of her prima facie case because she was discharged but was not replaced is not supported by Breed's testimony.  In pertinent part Breed testified:

    Q.   Do you know who replaced Ms. Marks?

---

[24]Marks' statements that the COH challenged these aspects of her prima facie case have no merit.  <u>See</u> Plaintiff's Memorandum, Docket Entry No. 27, p. 8.   <u>See also</u> COH's MSJ, Docket Entry No. 19, p. 32 (arguing only that "Marks was not replaced by anyone, let alone a person younger than her, in her position.").

[25]COH's Reply, Docket Entry No. 31, p. 5.

A.    Yes.

Q.    Who?

A.    They didn't replace her with assistant deputy
      director.  They did away with that position and
      brought in a CRM, which is a client relations
      manager.

Q.    This client relations manager, how does their
      position differ than Ms. Marks' position?

A.    Ms. Marks was responsible for the -- everything
      that the CRM manager does.  Plus, we've hired an
      employee relations manager.    She had his
      responsibilities.  She was also responsible for the
      FMLA.   She was responsible for the payroll and she
      was responsible for hiring.  All of those were
      under her authority.

Q.    So, essentially, they did away with her position
      and made four new positions?

A.    No.  They made two.

Q.    Okay.

A.    And all of those positions, except the payroll, now
      report to downtown HR.

Q.    So, the client relations manager and the employee
      relations manager are both at HEC?

A.    They're at HEC, but they're managed by managers at
      611 Walker.

Q.    Do you know who took the -- who became the CRM?

A.    Sandra Cadena-Vasquez.

Q.    Do you know how old she is?

A.    No.

Q.    Would you say she's young or old?

A.    She's probably middle.

-12-

Q.    Is she younger than Ms. Marks?

A.    Yes.

Q.    Do you know who became the [E]RM?

A.    Yes.

Q.    Who?

A.    Rogelio Martinez.

Q.    Rogelio.  Do you know how old he is?

A.    No.  But I think he's younger.  Him and Ms. Vasquez
      may be about the same age.

Q.    Okay.  So, Mr. Martinez is younger that Ms. Marks?

A.    Yes.  As a matter of fact, he told me he was in his
      40s.  That, I remember.

Q.    Okay.  Do you know how long Ms. Vasquez has been
      with the City?

A.    She just -- I don't know if she's ever worked for
      the City before, outside of as temp.  But, she
      became a permanent employee in, I think, September
      of 2014.  She case to us as a temp.

Q.    What about Mr. Martinez?

A.    He hired on permanently in March of 2015.[26]

Breed testified that although Marks' position of Deputy
Assistant Director was eliminated, two new positions were created
for the duties Marks' had performed, Employee Relations Manager and
Client Relations Manager, and two younger people were brought in to
fill those new positions, Rogelio Martinez, who was in his 40s, and
Sandra Cadena-Vasquez, who was about the same age as Martinez.

---

[26]Breed Deposition, pp. 30:5-32:7, Docket Entry No. 31-2, p. 9.

Because Breed's testimony shows that while Marks' position was eliminated, two new positions were created to perform Marks' duties, and those positions were filled by people outside Marks' protected class, Marks has made a prima facie showing of discrimination.  Because the record reflects that Marks' specific position was the only position eliminated and that her duties were assumed by two new hires outside of her protected class, Marks has made a prima facie showing of discrimination.  See Howard v. United Parcel Service, Inc., 447 Fed. App'x. 626, 629 & n. 2 (5th Cir. 2011).  See also Manaway v. Medical Center of Southeast Texas, 430 Fed. App'x. 317, 322 (5th Cir. 2011) ("[T]he burden for establishing a *prima facie* case is 'very minimal,' *see Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).").

> (b)   COH Has Articulated Legitimate, Nondiscriminatory
>        Reason for Discharging Marks

Citing the July 8, 2014, OIG Report, deposition testimony of Marks' immediate supervisor, Cutler, and the affidavit of Robin Curtis, Inspector General of the City of Houston, the COH argues that

> Marks was terminated by Cutler upon the recommendation of
> the Inspector General for the City of Houston, after the
> Inspector General sustained allegations that Marks had
> used City personnel, equipment and resources for her own
> personal use; had attempted to improperly promote two
> individuals in a short period of time; and made an

-14-

untruthful statement to Director Cutler that her attempt to get the second promotions so quickly was a joke.[27]

In pertinent part Curtis stated in her affidavit:

8.   In the OIG Report dated July 8, 2014, in my capacity as Inspector General, I sustained allegations made against Diane Marks. Specifically based on witness interviews, documentation, and other evidence, I sustained allegations that Marks violated City of Houston Code of Ordinances, Section 18-3(4) and (5), which prohibits City officials from:

(1) Us[ing] the official's position or the city's facilities, equipment or supplies for the private gain or advantage of the official or others, or us[ing] or attempt[ing] to use the official's position to secure special advantage for the position or others;

(2) Us[ing] or attempt[ing] to use any city employee(s) to perform acts or services for the private gain or advantage of the official or others, unless the city employee(s) is acting during off-duty hours or is on the duly approved leave of absence.

Additionally, I sustained that Marks' actions were inappropriate where she attempted to obtain promotions for two women a second time within 60 days of previous promotions, and that she made an untruthful statement to Department Director David Cutler that her attempt to get the second promotions so quickly was a joke.

9.   In view of Marks' violations of City Code and her poor judgment in attempting to promote two employees twice within 60 days, I recommended that Marks' at-will employment be terminated, or that she be allowed to retire, and that her human

---

[27]COH's Reply, Docket Entry No. 31, 3.  See also OIG Report Dated July 8, 2014, pp. 17, 23, Docket Entry No. 19-4, pp. 18, 24.

resources function be absorbed into the City of Houston's central Human Resources Department.[28]

In pertinent part Cutler testified:

Q. So, what did you find out about allegations of fraud and waste against Ms. Marks?

A. I received a phone call from Robin Curtis at OIG who told me that she had something to show me. We met. And out of the blue she said, "There's been somebody making copies of church bulletins and taking pictures and using City paper and services for non City business."

   And I said, "You know, someone reported that to me; but with an anonymous note under my door one time, I advised everybody, if you're doing this, stop, because it will get you fired."

   She said, "Yeah, it's Diane Marks." And it hit me like a tone of bricks. . .[29]

   . . .

Q. So, was it one copy? Was it a hundred copies?

A. Diane said it was, I think, five or six copies. OIG said, "We don't know how many it was, but there were some copies." She had the motive. She had the access and we had the paper. And she used Daniel to do the printing -- or Daniel to do the design work and there were some other things. But, basically, it was using City supplies, equipment and employees to do non City business.[30]

   . . .

---

[28]Affidavit of Robin Curtis ("Curtis Affidavit"), Docket Entry No. 31-1, p. 4 ¶¶ 8-9.

[29]Cutler Deposition, pp. 126:14-127:2, Docket Entry No. 19-2, p. 33.

[30]Id. at 129:21-130:4, Docket Entry No. 19-2, pp. 33-34.

Q.  Do you know how Ms. Marks was untruthful in the investigation?

A.  I believe that was when -- I think she pushed through a promotion or a pay raise for Sara Jermany.  And it hit, it hit Jane's desk; and Jane was really upset about it.  She said, "Did you approve this?"

> I said, "No."  And I said, "Well, let me go talk to Diane."  So I went to Diane's office and said, "Diane, are you messing with Jane?"

> She said, "Yeah.  I'm just messing with her." She laughed.  Well, apparently when she went in to give her statement to Sonny in OIG, she said -- he said she said, "No.  I did it because I was mad." So they cited her for -- either she was being untruthful to the investigator or she was being untruthful to me.

Q.  Okay.  But she told you what exactly?

A.  She told me she tried to push the promotion or pay raise through to get back at Jane to have fun with her.  It was just a joke.  And, apparently, the investigator said she said that "I didn't do it as a joke.  I did it because I thought it was wrong what Cutler did and that Sara should get the pay raise."[31]

When asked why he decided to terminate Marks, Cutler answered: "It was mainly the fact that she had used City supplies, services, equipment and personnel for non City business. . . The attempt to get the promotion didn't have a big play in my decision to terminate."[32]

---

[31]<u>Id.</u> at 132:23-133:19, Docket Entry No. 19-2, p. 34.

[32]<u>Id.</u> at 137:23-25, 138:7-8, Docket Entry No. 19-2, pp. 35-36.

The Fifth Circuit has held that violations of an employer's policies are legitimate nondiscriminatory reasons for discharge. See <u>Mayberry v. Vought Aircraft Co.</u>, 55 F.3d 1086, 1091 (5th Cir. 1995) (holding in a work-rule violation case that "by insisting that there was no [discriminatory] motivation in its decision to suspend Mayberry [and] that the decision was based solely on its conclusion, following an investigation, that Mayberry was at least partially at fault . . . [the employer] has discharged its burden of production"). Because COH has satisfied its burden of producing a legitimate, nondiscriminatory reason for discharging Marks, the presumption of discrimination created by her prima facie case disappears, and Marks must cite evidence of pretext or discriminatory motive capable of creating a genuine issue of material fact for trial. Marks appears to suggest that she need not rebut the COH's nondiscriminatory reason because a fact issue exists on whether she violated a work-rule. The COH's burden, however, is only one of production. <u>St. Mary's</u>, 113 S. Ct. at 2749. The COH "need not persuade the court that it was actually motivated by the proffered reasons." <u>Id.</u> (quoting <u>Texas Department of Community Affairs v. Burdine</u>, 101 S. Ct. 1089, 1094 (1981).

> (c)  Marks Fails to Cite Evidence Capable of Raising a
>       Fact Issue as to Pretext or Discriminatory Motive

A plaintiff may raise a genuine issue of material fact regarding pretext or discriminatory motive by showing that the

employer's stated reason for the adverse action is false or unworthy of credence, or by showing disparate treatment.  See Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010).  Marks argues that she has made both showings,[33] the COH argues that Marks has made neither showing.[34]

### (1)  Marks Fails to Cite Evidence Capable of Establishing that the COH's Stated Reason for Her Discharge is False

Marks argues that the COH's stated reasons for her discharge are false for three reasons.[35]  First, asserting that her subordinate, Daniel Mott, marketed his graphic design services to HEC employees, Marks argues that the city's contention she was discharged for using City resources for personal benefit is false because she did not ask Mott to perform design work for her on City time and did not use City resources to print the work but, instead, used third-party vendors to perform the printing as evidenced by receipts that she provided to the OIG investigator, and attached as an exhibit to her declaration filed in opposition to the COH's motion for summary judgment.[36]  Marks argues that the COH concluded

---

[33]Plaintiff's Memorandum, Docket Entry No. 27, pp. 11-12.

[34]COH's Reply, Docket Entry No. 31, p. 10.

[35]Id. at 11-12.

[36]Plaintiff's Memorandum, Docket Entry No. 27, p. 4 (citing Exhibit A, Marks' Declaration, pp. 3-4 ¶ 6, Docket Entry No. 27-1, (continued...)

she "violated city ordinances by mass printing church bulletins, wedding invitations, and funeral announcements — despite the fact that [she] provided third-party vendor receipts showing she paid — with her funds — for each item that she allegedly mass printed."[37] Citing Ion v. Chevron U.S.A., Inc., 731 F.3d 379 (5th Cir. 2013), Marks argues that the COH's "failure to conduct even the most cursory investigation, confirm the validity of the statement, or seek a second opinion calls into doubt the Defendant's reasonable reliance and good faith investigation, and, at the very least, creates a fact issue as to whether it would have terminated the plaintiff despite its retaliatory[, i.e., discriminatory] motive."[38]

Marks' reliance on the Fifth Circuit's opinion in Ion, 731 F.3d at 379, is misplaced not only because Ion involved a retaliation claim brought under the Family and Medical Leave Act ("FMLA"), not a discrimination claim brought under the ADEA, but also because both sides in Ion argued the case under the mixed-motive standard of causation, not the "but for" causation standard applicable in ADEA cases. Id. at 389-90. Moreover, Marks denies having used City resources to print the projects that Mott designed

---

[36](...continued)
pp. 4-5, and Exhibit A-1, thereto (receipts)).

[37]Id. at 11-12.

[38]Id. at 12.

for her personal benefit, but does not dispute that Mott performed design work for her personal projects.[39]   Nor does Marks cite any evidence to counter Mott's affidavit testimony that he performed design work for Marks' personal projects on City time.[40]   Instead, Marks merely cites her own testimony that she did not ask Mott to perform design work for her personal projects on City time.[41]   In other words, Marks disputes the facts underlying the COH's decision to discharge her.   But simply disputing the facts underlying an employer's decision is not sufficient to carry a plaintiff's burden at the pretext stage.   See Sandstad, 309 F.3d at 899 (citing Evans v. City of Houston, 246 F.3d 344, 355 (5th Cir. 2001)).   See also Haverda v. Hays County, 723 F.3d 586, 596 n. 1 (5th Cir. 2013)

---

[39]Marks' Declaration, p. 3 ¶ 6, Docket Entry No. 27-1, p. 4 ("I vehemently denied engaging in any wrongdoing. . . Mr. Mott performed graphic design work for me and other HEC employees.")

[40]See Affidavit of Daniel Mott ("Mott Affidavit"), Docket Entry No. 31-6, pp. 1-2 ¶ 3 ("For several years beginning in approximately 2006, I performed graphic design services for Diane Marks at her request.   These services included designing church programs, family reunion fliers, graduation announcements, and funeral programs for Ms. Marks's personal use.   Ms. Marks was my direct supervisor during part of this time, and when she was not my direct supervisor, she was in a supervisory role and I understood that I was required to assist her as needed.   Ms. Marks did not pay me for my services, and I performed these services on city time. At the times Ms. Marks requested that I perform these services, we were both employees of the city of Houston, and we were both at work during business hours.   Ms. Marks did not instruct me to perform these services during my off hours.").

[41]Marks' Declaration, p. 3 ¶ 6, Docket Entry No. 27-1, p. 4 ("I never paid Mr. Mott for these services nor did I ask him to perform these services on 'city time.'").

("Because even an incorrect belief that an employee's performance is inadequate qualifies as a legitimate reason to terminate an at-will employee, a plaintiff must offer evidence to support an inference that the employer had a [discriminatory] motive, not just an incorrect belief.").

Second, citing Cutler's deposition testimony Marks argues that the COH

> erroneously argues that [she] was terminated for attempting to obtain a promotion [for] two subordinates that report to her. Even, if true, obtaining a promotion for a subordinate is not a violation of any City policy. More importantly, Cutler admits it was not a violation nor was it used in his decision to terminated Marks.[42]

In pertinent part Cutler testified that while Marks' attempt to gain a promotion for her friends was not the main reason he decided to discharge her, but it did factor into his decision:

> Q.    . . . So, what had a bearing on your decision to terminate?
>
> A.    It was mainly the fact that she had used City supplies, services, equipment and personnel for non City business.
>
> Q.    Okay.
>
> A.    And the fact that I had told everybody several years before that "Do not do it, because you will get fired."
>
> Q.    So, essentially, the promotion issue really didn't have any bearing on your decision to terminate?

---

[42]Plaintiff's Memorandum, Docket Entry No. 27, p. 11 (citing Exhibit C, Cutler Deposition, pp. 137:13-138:1, Docket Entry No. 27-3, pp. 36-37).

-22-

A.   The attempt to get the promotion didn't have a big play in my decision to terminate.

Q.   Did it have any play?

A.   A little.[43]

Because Cutler testified that Marks' attempt to obtain promotions for two employees without his authorization was not the primary reason for which he decided to discharge her, but did factor into that decision, Cutler's deposition testimony does not present any evidence from which a reasonable fact finder could conclude that the COH's stated reason for Marks' discharge is not true.  Moreover, Marks' contention that the COH's reason for discharging her is pretextual because there are no City policies that would preclude an employee from getting two promotions in quick succession misses the point, i.e., that the misconduct for which Marks was discharged was attempting to obtain promotions for her friends without Cutler's knowledge or authorization, and then untruthfully telling Cutler that she was simply joking with another employee when he questioned Marks about these attempts.[44]

Third, asserting that the COH has shifted its position over time, Marks argues that "[d]efendant went from stating Marks[']

---

[43]Cutler Deposition, pp. 137:21-138:13, Docket Entry No. 19-2, 35-36, and Docket Entry No. 27-3, pp. 36-37.

[44]COH's Reply, Docket Entry No. 31, p. 13 (citing Exhibit 9, Curtis Affidavit, Docket Entry No. 31-1, p. 4 ¶¶ 8-9; Exhibit 2 to COH's MSJ, Cutler Deposition, pp. 132:23-138:13, Docket Entry No. 19-2, pp. 34-36).

termination was for 'poor performance' to being for violations of city ordinances. *See generally* Ex. A-2, Marks Decl; Ex. C, Cutler Dep. 137:13-138:1."[45]   Asserting that an employer's shift of position on certain arguments is indicative of pretext, Marks argues that "these shifts call for a jury's assessment, not judgment as a matter of law."[46]  In support of her argument that the COH shifted positions as to why she was discharged, Marks contrasts the COH's stated reason for discharging her contained in the COH's motion for summary judgment with the reason stated in the Termination of Employment letter that she received on July 14, 2014.   In its motion for summary judgment, the COH argues that Marks was discharged "for using City resources and personnel for her personal benefit, and to a lesser extent, for improperly attempting to obtain promotions for friends twice in a short period of time, without Cutler's knowledge and approval."[47]   In alleged contrast, the Termination Letter of July 14, 2014, stated: "Effectively immediately, your employment with the City of Houston Emergency Center is terminated due to your unsatisfactory job

---

[45]Plaintiff's Memorandum, Docket Entry No. 27, p. 11 (citing Exhibit A, Marks' Declaration, Docket Entry No. 27-1, and Exhibit C, Cutler Deposition, pp. 137:13-138:1, Docket Entry No. 27-3, p. 36).

[46]Id.

[47]COH's Reply, Docket Entry No. 31, p. 9.

performance in your current position."[48]   Citing Gee v. Principi,
289 F.3d 342, 347-48 (5th Cir. 2002), Marks argues that summary
judgment is not warranted on her ADEA claim because "inconsistent,
shifting reasons can support a jury's inference of guilt and a
finding of liability."[49]

In Gee, 289 F.3d at 347-48, the Fifth Circuit held that the
plaintiff had satisfied her burden of raising a genuine issue of
fact as to pretext by pointing to factual discrepancies in the
decision-maker's statements regarding his reasons for the adverse
employment action at issue.   See also Burrell v. Dr. Pepper/Seven
Up Bottling Group, Inc., 482 F.3d 408, 412 n. 11 (5th Cir. 2007)
("[A]n employer's inconsistent explanations for its employment
decisions at different times permits a jury to infer that the
employer's proffered reasons are pretextual.") (citing Gee, 289
F.3d 347-48).   Unlike the plaintiff in Gee, who pointed to factual
discrepancies in the decision-maker's statements regarding his
reasons for the adverse employment action at issue, Marks has not
pointed to any factual discrepancies in COH's reasons for the
adverse employment action at issue here.   Instead, Marks' own
testimony shows that before being discharged she received a letter
from the OIG stating that it had sustained allegations that she had

---

[48]Exhibit A-2 to Plaintiff's Declaration, Docket Entry No. 27-
1, p. 12.

[49]Plaintiff's Memorandum, Docket Entry No. 27, p. 11.

"violated a City ordinance[,] . . . attempted to do two payroll personnel actions[,] and . . . was untruthful,"[50] that a week before she was discharged, Cutler told her that based on the results of its investigation, the OIG recommended that she be discharged,[51] and that when she was discharged Cutler handed her a letter stating that she was being discharged for unsatisfactory job performance.[52] Because the reason for which the COH argues that Marks was discharged, is not only the basis of the allegations that the OIG sustained against her, but also the same reason for which the OIG recommended and Cutler decided to discharge Marks, Marks has failed to present any evidence from which a reasonable fact finder could conclude that the COH has, in fact, changed its story and offered inconsistent, shifting reasons for her discharge. On the contrary, because the COH has maintained the same factual basis for Marks' discharge throughout this action, the fact situation in this case is distinguishable from the one in Gee. See Squyres v. Heico Companies, L.L.C., 782 F.3d 224, 234 (5th Cir. 2015) (distinguishing Gee from situation facts showing that "when alleged inconsistent statements are considered in their full context, the inconsistencies disappear").

---

[50]Marks' Deposition, p. 137:17-23, Docket Entry No. 19-1, p. 35.

[51]Id. at 135:2-8, Docket Entry No. 19-1, p. 34.

[52]Id. at 133:13-137:13, Docket Entry No. 19-1, pp. 34-35. See also Termination of Employment Letter, Exhibit A-2 to Plaintiff's Memorandum, Docket Entry No. 27-1, p. 12.

Marks denies having used City resources for her personal benefit, but does not dispute that she asked her subordinate, Mott, to perform design work for her personal projects.  Nor does Marks dispute that she attempted to obtain promotions for friends twice in a short period of time without Cutler's knowledge or approval. Although Marks argues that attempting to obtain these promotions did not violate City policy, Marks does not dispute that attempting to obtain these promotions without Cutler's approval or authorization was not appropriate.  The court therefore concludes that whether considered in isolation or collectively, none of the evidence that Marks cites is evidence from which a reasonable fact finder could conclude that the COH's articulated reason for her discharge is not true and is, instead, a pretext for age discrimination.

> **(2)  Marks Fails to Cite Evidence Capable of Establishing that She Suffered Disparate Treatment**

Marks makes two arguments for pretext based on disparate treatment.[53]  First, asserting that Cutler admitted the COH deviated from its normal disciplinary process when discharging her, Marks

_____

[53]COH's Reply, Docket Entry No. 31, pp. 11-12.

argues that similarly situated younger individuals were treated far more favorably when it came to discipline.[54]  Marks explains:

> I was the sole HEC employee reporting to Mr. Cutler that was non civil service protected.  Essentially, I was an "at will" employee who did not have the luxury of protection by the City's progressive disciplinary procedures.  However, as a HEC employee, I was eligible to participate in the Employee Discipline Committee ("EDC") process.  I was not afforded the ability to have my OIG sustained allegations go before the Employee Discipline Committee.  Instead, Cutler immediately terminated me.  Throughout the existen[ce] of the EDC, this had never occurred.[55]

Marks also states in her declaration that "similar allegations were raised against Helen Woods, Pamela Wafer, and [Daniel] Mott; however, none of them were investigated by the OIG or disciplined by Mr. Cutler."[56]  But missing from Marks' declaration or response in opposition to the COH's motion for summary judgment is any evidence showing either that similar complaints were, in fact, made against Woods, Wafer, or Mott, or that any of those three employees were younger than she.  Moreover, as Marks acknowledges in the excerpt from her declaration quoted above, the reason that she was not afforded the ability to have the OIG-sustained allegations against her presented to HEC's EDC was not her age, but her status

---

[54]Plaintiff's Memorandum, Docket Entry No. 27, p. 11 (citing Exhibit A, Marks' Declaration, p. 4 ¶ 7, Docket Entry No. 27-1, p. 5, and Exhibit C, Cutler Deposition, pp. 34:15-35:10, 83:7-10, Docket Entry No. 27-3, pp. 11, 23).

[55]Marks' Declaration, p. 4 ¶ 7, Exhibit A to Plaintiff's Memorandum, Docket Entry No. 27-1, p. 5.

[56]Id. at 3 ¶ 6, Docket Entry No. 27-1, p. 4.

as an at-will, non-civil-service employee. Marks has thus failed to present any evidence from which a reasonable fact finder could conclude that similarly situated younger individuals were treated far more favorably when it came discipline.

Second, Marks argues that Cutler inquired weekly into when she would retire while promising her position to multiple, younger, less qualified employees.[57] Marks states:

> During my time as Assistant Deputy Director, Mr. Cutler repeatedly inquired to when I would retire. Mr. Cutler would inquire about my retirement in weekly staff meetings, even after I informed him I had no desire to retire. In addition to his inquiries during weekly staff meetings, Mr. Cutler would come to my office and ask me when I was going to retire regardless of who was there. These were not stray inquiries, nor were they done in the context of business succession planning meetings. Mr. Cutler's retirement inquires were so frequent, Cheryl Breed and others, protested his continuous inquiries. Mr. Cutler, on numerous occasions, publicly promised my position to younger employees. Specifically, he promised Stacey Prevost and Yolonda Castillo the Assistant Deputy Director position even though I had no desire to retire. In fact, Mr. Cutler asked me to retire weeks prior to my termination.[58]

Marks argues that Cutler's ageist statements are sufficient to raise a genuine issue of material fact on pretext because Cutler was the individual who made the decision to discharge her.

Citing <u>Albertson v. T.J. Stevenson & Co.</u>, 749 F.2d 223 (5th Cir. 1984), the COH objects to Marks' statement that Cutler asked

---

[57]Plaintiff's Memorandum, Docket Entry No. 27, p. 11.

[58]Marks' Declaration, pp. 2-3 ¶ 4, Exhibit A to Plaintiff's Memorandum, Docket Entry No. 27-1, pp. 3-4.

her to retire weeks prior to her termination as contrary to her deposition testimony.[59] In <u>Albertson</u> the Fifth Circuit stated that "the nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." <u>Id.</u> at 228. The COH argues that Marks testified in her deposition that

> in staff meetings, Cutler asked key employees, including herself, Cheryl Breed, and Jane Nyambura, about their retirement plans in the context of succession planning. *See* Marks Dep., **Ex. 1**, Dkt 19-1, at 69:6-71:16. Marks testified that the names of Stacey Prevost and an HPD employee named "Yolanda" were mentioned as potential successors, but there was no discussion of having "promised" the position to anyone. Marks Dep., **Ex. 1**, Dkt 19-1 at 69:6-73:10. Likewise Cheryl Breed testified that Cutler asked all the core staff about their retirement plans:
>
> > . . . Mr. Cutler is the one who talked about succession planning. And he would go around the table and ask everybody, "When are you retiring? When are you retiring?" And from there we -- he was saying, "We need to know who's going to replace who."
>
> Deposition of Cheryl Breed taken June 10, 2016 ("Breed Dep."), **Ex. 10**, at 23:15-24:3; 25:2-26:2; 28:12-19. Breed also testified that the discussions of succession planning "caused a lot of cat fighting among the managers about who was going to succeed who." Breed Dep., **Ex. 10**, at 21:24-22:12; 25:5-26:2; 28:12-19. In fact both Cutler and Marks testified about a disagreement between Prevost and Cutler in which Cutler defended Marks against Prevost, and after which Cutler decided that Prevost should not be Marks's successor. *See* Cutler Dep., **Ex. 2**,

---

[59]COH's Reply, Docket Entry No. 31, pp. 1-2, and p. 7 ("The City objects to the allegations in Paragraph 4 of Marks's declaration that Cutler 'asked' her to retire, as they are contrary to her testimony in her deposition.").

Dkt 19-2, at 118:24-121:10; Marks Dep., **Ex. 1**, Dkt 19-1 at 73:3-10:

> Q.   Okay.   Anything else that he said that made you believe that you were discriminated against because of your race?
>
> A.   Again, he just always talked about replacing me, and , you know, until he had the disagreement with Stacie Prevost, then he started targeting replacing me with this Yolanda — I think her last name was Martinez, but I can't — I can't say, for sure, her last name.

Marks Dep., **Ex. 1**, Dkt 19-1 at 73:3-10.   Cheryl Breed testified that when Cutler proposed  Yolanda Castillo as a possible successor, Marks disagreed and proposed the names of two of her employees, Helen Woods and Sara Jermany, as potential successors.  Breed Dep., **Ex. 10**, at 32:23-33:8.[60]

Statements about age consisting only of Cutler's questioning Marks about when she planned to retire, cannot, standing alone, raise a genuine issue of material fact for trial.  See Moore v. Eli Lilly & Co., 990 F.2d 812, 818 (5th Cir.), cert. denied, 114 S. Ct. 467 (1993) (inquiring about retirement is not per se evidence of an intent to discriminate because of age).   See also Duff v. Farmers Insurance Exchange, Civil Action No. 3:12-CV-1679-D, 2014 WL 1577786 at *17 (N. D. Tex. April 21, 2014) ("[T]he court concludes that [repeated inquiries about plaintiff's plans for retirement made by her immediate supervisor] are insufficient to create a genuine issue of material fact regarding pretext.");  Paulissen v.

---

[60]Id. at 5-7.

MEI Technologies, Inc., 942 F.Supp.2d 658, 671 (S.D.Tex. 2013) ("age-related remarks cannot be the only evidence of pretext"). No one disputes that Cutler repeatedly asked Marks and other HEC employees when they would retire. In addition, no one disputes that it is generally only older employees who are eligible for retirement. However, Marks' own testimony shows that Cutler not only asked all key employees about their plans for retirement within the context of succession planning, but also that his succession planning included discussion of specific successors for key employees like Marks.[61] Marks' testimony on this issue is corroborated by the testimony of Cheryl Breed, another of the key employees at the HEC who Cutler regularly questioned about her plans for retirement.[62] Moreover, since Marks fails to point to any evidence showing that Cutler ever asked her to retire that is outside of the declaration submitted in opposition to the COH's motion for summary judgment, and Marks' declaration testimony that Cutler asked her to retire conflicts with her deposition testimony, the COH's objection to that part of ¶ 4 of Marks' declaration will be sustained. Because Marks neither argues nor cites any evidence capable of establishing that her age was the "but for" cause of the decision to discharge her, Marks' has failed to present any evidence from which a reasonable fact finder could conclude that she was discharged because of age discrimination.

---

[61]Marks' Deposition, pp. 69:20-71:16, Docket Entry No. 19-1, p. 18.

[62]Breed Deposition, pp. 21:15-28:19, Docket Entry No. 31-2, pp. 6-8.

For the reasons stated in § III.A.2(c)(1), above, the court has already concluded that the summary judgment evidence does not raise a genuine issue of material fact on the truth and/or falsity of the COH's stated reason for discharging Marks. Moreover, to the extent Marks is arguing that her age may have been "a" motivating factor in the COH's decision to discharge her, she has not come forth with any summary judgment evidence that it was "the" motivating factor. As such, and because age discrimination claims under the ADEA cannot be proven by showing an employer's mixed motive, Gross, 129 S.Ct. at 2351, the comments about which Marks complains do not raise a genuine issue of material fact for trial. The court, therefore, concludes that Marks has failed to satisfy her burden to cite evidence capable of raising a genuine issue of material fact as to whether the COH's legitimate, non-discriminatory reason for her discharge was pretextual, and from which a reasonable fact finder could conclude that she was discharged because of her age.

**B.    COH is Entitled to Summary Judgment on Claims Asserted Under Title VII and the Texas Whistleblower Act**

In addition to the ADEA claim discussed above, Marks' Original Petition alleges claims for employment discrimination based on race and sex in violation of Title VII, and for wrongful discharge in violation of the Texas Whistleblower Act. Although the COH seeks

summary judgment on these claims, Marks' response in opposition to the COH's motion for summary judgment does not address them.

Local Rule 7.3 provides that: "Opposed motions will be submitted to the judge twenty days from filing without notice from the clerk and without appearance by counsel." S.D. Tex. R. 7.3 (2000). Local Rule 7.4 provides:

> Failure to respond will be taken as a representation of no opposition. Responses to motions
>
> A.   Must be filed by the submission day;
> B.   Must be written;
> C.   Must include or be accompanied by authority; and
> D.   Must be accompanied by a separate form order denying the relief sought.

S.D. Tex. R. 7.4 (2000). In accordance with Local Rule 7.4, the court considers Marks' failure to respond to the COH's motion for summary judgment as a representation of no opposition to the COH's summary judgment evidence on these claims. Although a district court may not grant summary judgment by default simply because there is no opposition to the motion, the court may accept as undisputed the movant's version of the facts and grant a motion for summary judgment when the movant has made a prima facie showing of entitlement to summary judgment. See John v. State of Louisiana (Board of Trustees for the State Colleges and Universities), 757 F.2d 698, 708 (5th Cir. 1985) (when the movant's summary judgment evidence establishes its right to judgment as a matter of law, the district court is entitled to grant summary judgment absent unusual circumstances); and Eversley v. Mbank Dallas, 843 F.2d 172, 174

-34-

(5th Cir. 1988)(when the nonmovant fails to respond to a motion for summary judgment, the court does not err by granting the motion when the movant's submittals make a prima facie showing of entitlement to judgment as a matter of law).

> ### 1.   The COH is Entitled to Summary Judgment on Marks' Title VII Claims for Race and Sex Discrimination

The COH argues that it is entitled to summary judgment on Marks' Title VII claims for race and sex discrimination for essentially the same reasons that it is entitled to summary judgment on Marks' ADEA claim, i.e., Marks is unable to establish a prima facie case of race or sex discrimination, and Marks is unable to cite any evidence capable of establishing that the legitimate, non-discriminatory reasons for which the COH says she was discharged are not true, but are, instead, pretexts for discrimination based on race or sex.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race . . . sex . . ." 42 U.S.C. § 2000e-2(a)(1). Like claims brought under the ADEA, claims of employment discrimination brought under Title VII can be proven through direct or circumstantial evidence, and circumstantial evidence cases follow the burden-shifting analysis articulated in McDonnell Douglas, 93 S.Ct. at 1817. See Bauer v. Albemarle Corp.,

-35-

169 F.3d 962, 966 (5th Cir. 1999)("The same evidentiary procedure for allocating burdens of production and proof applies to discrimination claims under both [Title VII and the ADEA].").  To establish a prima facie case of intentional discrimination based on race or sex using the McDonnell Douglas framework Marks must show that (1) she belongs to a protected class, (2) she was qualified for her job, (3) she suffered an adverse employment decision, and (4) she was replaced by someone outside of her protected class.  See Bauer, 169 F.3d at 966.  If Marks makes a prima facie showing of discrimination, the burden shifts to COH to articulate a legitimate, non-discriminatory reason for her discharge.  If the COH articulates a legitimate, nondiscriminatory reason for Marks's discharge, the presumption of discrimination disappears.  Id.  Marks retains the ultimate burden of proving intentional discrimination.  Id. (citing St. Mary's, 113 S. Ct. at 2742).

The COH argues that it is entitled to summary judgment because Marks has failed to establish a prima facie case of race or sex discrimination, and has failed to raise a genuine issue of material fact for trial that the COH's stated reason for her discharge was not true but, instead, a pretext for discrimination based on race or sex.[63]  The COH argues that Marks is unable to establish a prima facie case of race or sex discrimination because she is unable to

---

[63]COH's MSJ, Docket Entry No. 19, pp. 23-32.

offer evidence of any similarly situated employees who were treated
more favorably under similar circumstances.   The COH argues:

> Marks's assertion that she was treated less favorably
> than similarly situated, non-protected employees is
> general and unsubstantiated.  Marks's EEOC Charge . . .
> generally alleges the following: "[s]imilarly situated
> executives who were accused of more egregious allegations
> were not terminated.   However, they were afforded the
> option to be demoted in rank and position or transferred
> to another department . . .  These similarly situated
> employees were white or male counterparts."  [Marks EEOC
> Charge #460-2014-03544, **Exhibit 7**].  Marks did not state
> any names of comparators in her Charge nor did she
> elaborate further.  Marks's Petition does not clarify her
> allegations much further.  She asserts:   "Marks was not
> afforded the same benefits as other non African-American
> HEC and male employees.  Specifically, similarly situated
> non-African-American HEC executive employees such as
> Sharon Nalls had had more egregious allegations of
> misconduct lodged against them.   However, instead of a
> hasty termination similar to Marks, these employees were
> given an array of options that all resulted in continued
> employment with COH."   Plaintiff's Original Petition,
> ¶ 23.
>
> . . . Marks presents Nalls as her comparator, but
> her deposition testimony reveals that she was not a true
> comparator; according to Marks, Nalls was purportedly
> accused of treating people unfairly, but there was no
> finding of discrimination or harassment.   Marks Dep.,
> **Ex. 1**, 104:8-20.   Marks's termination was due to
> violations of the city Ordinance prohibiting the use of
> City personnel, City time and City supplies for personal
> use, and for attempting to promote two employees within
> a sixty-day period which was not in accordance with HR
> policy.  OIG Report, **Ex. 4**, at 23; Cutler Dep., **Ex. 2**, at
> 128:22-138:13.  The other comparators that Marks uses as
> comparators in her deposition, Laura Granger and Don
> Pagel, both had performance related issues and reported
> to a different manager.  Marks Dep., **Ex. 1**, at 95-102.
> The Fifth Circuit requires that an employee who proffers
> a fellow employee as a comparator demonstrate that the
> employment actions at issue were taken under nearly
> identical circumstances.   "The employment actions being
> compared will be deemed to have been taken under nearly
> identical circumstances when the employees being compared

> *held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and **have essentially comparable violation histories.***"[64]

Marks' failure to cite evidence capable of proving that she was treated differently than similarly situated employees who were not members of her race or sex means that Marks has failed to establish a prima facie case of race or sex discrimination under Title VII.  See Okoye v. University of Texas Houston Health Science Center, 245 F.3d 507, 514 (5th Cir. 2001) ("[T]o establish disparate treatment a plaintiff must show that the employer gave preferential treatment to [] [another] employee under nearly identical circumstances, that is, that the misconduct for which [the plaintiff] was discharged was nearly identical to that engaged in by . . . [other] employee[s].")(citations omitted). Accordingly, the court concludes that the COH is entitled to summary judgment on Marks' Title VII claims for race and sex discrimination.

### 2.   The COH is Entitled to Summary Judgment on Marks' Texas Whistleblower Act Claim

The COH argues that Marks' Texas Whistleblower Act claim fails as a matter of law because Marks did not in good faith report a violation of the law to an appropriate law enforcement authority,

---

[64]Id. at 24-26 (citing Lee v. Kansas City Southern Railway Co., 574 F.3d 253, 260 (5th Cir. 2009)).

and because Marks never made any allegation against Cutler or anyone else prior to her discharge in July of 2014.[65]   The COH argues that:

> Marks bases her whistleblower claim on responses she gave to an investigator with the City of Houston Office of the Inspector General, who was investigating allegations against Marks herself.   First, the Office of Inspector General is not an "appropriate law enforcement authority," Second, the events she told the investigator about were not violations of the law.   Third, Marks never made a report to the OIG until *after* her termination — rather, she merely responded to questions posed to her about certain allegations.[66]

The Texas Whistleblower Act, Texas Government Code Chapter 554, prohibits retaliation against a public employee who in good faith reports a violation of the law to an appropriate law enforcement authority.

> To establish a valid claim under the Act, the employee must demonstrate that:
>
> (1)   he is a public employee;
>
> (2)   he made the report in good faith;
>
> (3)   he reported a violation of the law;
>
> (4)   the report was made to an appropriate law enforcement authority;
>
> 5)   and he suffered retaliation as a result of making the report.

---

[65]Id. at 2-3.   See also COH's Reply, Docket Entry No. 31, pp. 3, 14-17.

[66]Id. at 3.

<u>Vela v. City of Houston</u>, 186 S.W.3d 49, 52 (Tex.App.—Houston [1st Dist.] 2005, no pet.) (citing Tex. Gov. Code § 554.002(a)).   The Whistleblower Act requires proof of each of these elements.   <u>See Department of Human Services v. Okoli</u>, 440 S.W.3d 611, 617 (Tex. 2014) (dismissing action for lack of jurisdiction because plaintiff did not report the alleged violation of the law to an appropriate law enforcement authority).

Asserting that "Marks claims that it was her statements to OIG about 'fraud and waste' at HEC that led to her termination in direct violation of the Texas Whistleblowers' Act,"[67] the COH argues:

> Marks' allegations to OIG referencing fraud and waste were not made until August, 2014—one full month after her termination.   In order for an employer to retaliate against an employee, the protected activity had to have occurred ***prior*** to the termination. . . .
>
> The facts or this case are clear: the "complaints" made by Marks that she now considers Whistleblower protections were made after her termination and cannot form the basis of any retaliation claim, let alone an action under the Texas Whistleblower Act.[68]

In support of this argument the COH cites the deposition testimony of OIG investigator, Kirchner:

> Q.   I'm going to hand you a document that's been marked as Exhibit 8 to your deposition.   Can you tell us what Exhibit 8 is?

---

[67]<u>Id.</u> at 10 (citing Plaintiff's Original Petition, Docket Entry No. 1-4, pp. 6-7 ¶¶ 26-28).

[68]<u>Id.</u> at 10-11.

A.   It's my report on the Diane Marks' complaint filed
     against Mr. Cutler.  And the complaint was filed on
     August 19th, 2014.

Q.   August 19th, 2014?

A.   Yes.

Q.   Okay.  And was that before or after Ms. Marks was
     terminated?

A.   After.

Q.   Okay.  And what did Ms. Marks complain of on August
     1[9], 2014?

A.   You want me to read it?

Q.   You can read it or you can use your own words to
     tell me.

A.   Okay.   "Ms.  Marks  alleged  that  David  Cutler
     terminated  her  employment  without  justification
     because  she  refused  to  engage  in  employee
     misconduct  and  she  reported  violations  of  city,
     state,  and  federal  laws  which  he  refused  to
     acknowledge.  She  alleged  Mr.  Cutler  wasted  HEC
     funds  through  his  negligent  hiring  practices  and
     mismanagement of HEC resources and misused overtime
     funds."

          "Ms.  Marks  alleged  that  Daniel  Mott  while  in
     his  role  as  HEC  Internal  Affairs  investigator
     handled HEC investigations in an untruthful manner
     and used City vehicles for personal use."

          "Ms.  Marks  alleged  that  Jane  Nyambura  violated
     City  hiring  practices  when  she  'blatantly
     discriminated'  against  potential  candidates  for  the
     position  of  Systems  Accountant  III  and  did  not  give
     them  the  opportunity  to  interview  for  the
     position."

          "Ms.  Marks  alleged  that  Tony  Cross  falsified
     training  documents  in  order  to  make  it  appear  he
     was  doing  his  job  as  Division  Manager  of  Training
     at the HEC."

Q.    You have read a litany of complaints by Ms. Marks,
      correct?

A.    Yes, ma'am.

Q.    And Ms. Marks made complaints against David Cutler,
      right?

A.    In this investigation -- or in this complaint, yes.

Q.    Thank you.  And in August of 2014 Ms. Marks also
      made complaints against Daniel Mott?

A.    Right.

Q.    And  in  August  of  2014  Ms.  Marks  also  made
      complaints against Jane Nyambura, correct?

A.    Correct.

Q.    Okay.  Did Ms. Marks make any of these allegations
      in her interview with you in May 2014?

A.    No, ma'am.[69]

Because Kirchner's deposition testimony constitutes undisputed

evidence that Marks did not make any of the complaints on which her

Texas Whistleblower Act claim is based until **after** she was

discharged, the COH is entitled to summary judgment on this claim

because Marks cannot possibly prove that she suffered an adverse

action in retaliation for making these complaints.

### IV.  Conclusions and Order

For the reasons stated in § III.A.2(c)(2), the COH's objection

to Marks' statement that Cutler asked her to retire made in ¶ 4 of

_____

[69]Oral Deposition of Clarence "Sonny" Kirchner, pp. 101:6-
103:8, Docket Entry No. 31-3, pp. 26-27.

Marks' declaration attached as Exhibit A to Marks' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Docket Entry No. 31), is **SUSTAINED**, the COH's objections to ¶ 3 and the rest of ¶ 4 of Marks' declaration are **OVERRULED** because the COH has failed to show that those statements conflict with Marks' deposition testimony, and the COH's objection to ¶ 8 of Marks declaration is **MOOT** because the court has not relied on that paragraph in resolving the pending motion for summary judgment.

Because for the reasons explained in § III.A, above, the court concludes that the COH is entitled to summary judgment on Marks' claim of age discrimination in violation of the ADEA, for the reasons explained in § III.B.1, above, the court concludes that the COH is entitled to summary judgment on Marks' claims for race and sex discrimination in violation of Title VII, and for the reasons explained in § III.B.2, above, the court concludes that the COH is entitled to summary judgment on Marks' claim for wrongful discharge in violation of the Texas Whistleblower Act, the City of Houston's Motion for Summary Judgment, Docket Entry No. 19, is **GRANTED**.

**SIGNED** at Houston, Texas, on this 30th day of September, 2016.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE